IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs November 28, 2023 in Knoxville

## STATE OF TENNESSEE v. ROBERT JAMES HOUSTON

**Appeal from the Circuit Court for Giles County
No. CR-15512   J. Russell Parkes, Judge**

_____

### No. M2022-00844-CCA-R3-CD

_____

A Giles County jury convicted the Defendant, Robert James Houston, of aggravated assault and simple assault, and the trial court sentenced him to a total effective sentence of ten years of incarceration.  On appeal, the Defendant contends that the evidence is insufficient to sustain his convictions.  After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and KYLE A. HIXSON, JJ., joined.

L. Samuel Patterson, Columbia, Tennessee, for the appellant, Robert James Houston.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Rebecca S. Parsons, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Background and Facts

This case arises from the Defendant's cutting his girlfriend's neck with a knife.  Law enforcement officers found the victim bleeding from the neck inside the residence she shared with the Defendant, and emergency responders transported the victim to the hospital by helicopter.  For this offense, a Giles County grand jury indicted the Defendant for attempted first-degree murder and domestic assault.

#### A. Trial

The following evidence was presented at the Defendant's 2022 trial: Trooper Dennis Keefer testified that he worked for the Tennessee Highway Patrol and that on November 5, 2020, he responded to the victim's residence along with Giles County Sheriff's Deputy Robert Morse. The Defendant was also there. Trooper Keefer found the victim lying on the floor with a knife wound on her neck. The Defendant's mother and her boyfriend were also at the residence. The Defendant's mother was holding a dishcloth on the victim's neck, and the Defendant was standing nearby. The victim was "hysterical" and saying she did not want the Defendant near her. Trooper Keefer rendered first aid until paramedics arrived. Additional law enforcement arrived, and the Defendant was placed in handcuffs. The State showed a picture of the victim's neck wound to the jury.

On cross-examination, Trooper Keefer recalled that he responded to the residence at 4 a.m. He stated that the paramedics made the decision to transport the victim by "Life Flight." On redirect examination, Trooper Keefer testified that the victim told him she and the Defendant had argued about her leaving him, the Defendant became upset, and he used a folding pocket knife to cut her neck. On recross examination, Trooper Keefer stated that there was a lot of blood on the kitchen floor where he found the victim.

Pulaski Police Department Sergeant Jerome Robinson testified that he responded to the scene as other officers were escorting the Defendant to a police vehicle. Inside the residence, the victim was lying on the kitchen floor screaming and yelling and bleeding from her neck.

Deputy Robert Morse testified that he was a deputy for the Giles County Sheriff's Department and responded to the victim and Defendant's residence. Deputy Morse arrived at the same time as Trooper Keefer and found the Defendant, his mother, and his mother's boyfriend inside the residence. The Defendant's mother was rendering aid to the victim. Deputy Morse identified the yellow sweatshirt and jeans worn by the Defendant at the scene. Deputy Morse detained the Defendant and read him his *Miranda* rights. The Defendant made a couple of statements, first saying that the victim cut her own throat. He stated that they had been arguing, she was drinking and depressed, and she wanted to move. He later stated that she "leaned into" the knife.

Amber Remagen testified that she worked as a paramedic for the Giles County Ambulance Services, and that she responded to the scene in this case where she found the victim with a "large laceration" on her neck. The laceration stretched from below her ear to the bottom of her throat. The victim stated that the Defendant had cut her. The victim told Ms. Remagen, "Don't let me die" and "Don't let him get me."

On cross-examination, Ms. Remagen recalled that the victim's clothes were "saturated" in blood. The victim smelled of alcohol and admitted to drinking alcohol that evening.

The victim testified that she currently was residing in Michigan but had lived in Tennessee in 2020 and had been in a romantic relationship with the Defendant. On November 5, 2020, the two were living together when the victim confronted the Defendant about another woman. The victim said she had been drinking, as had the Defendant, and she was "buzzed." The victim told the Defendant that she wanted to leave him, and he told her to get out of the house. The Defendant began hitting her in the stomach and face. The Defendant put his hand over the victim's mouth, cutting off her airway, which led her to start "panicking." The Defendant then picked up a knife off a nearby piece of furniture and "snapped" it open so the blade was visible. The Defendant came towards the victim and "cut." He held the knife in his right hand and cut her on the neck from the side of her head down towards the center base of her neck. As he put the knife to her neck, the Defendant said, "Die, Crip bitch, die." The victim was "trying to get out of there" but her mind "went black." The victim, screaming, ran into the living room. The Defendant said to her that he had only "nicked" her and that she was exaggerating.

The victim denied that she cut herself with the knife. She testified that she was given twenty-four staples and nine stitches in her neck. Her saliva gland was severed. The victim stated that she had reached out to the Defendant since the incident and that she was inclined to "forgive and forget." She testified she had been abused by her father and tended to return to abusive relationships such as the one with the Defendant. She stated that they communicated in a romantic way while the Defendant was in jail awaiting trial. The victim reiterated that, at the time of the knife attack, she thought she was going to die.

Missy Story testified that she worked as a victim advocate at a women's domestic violence center and met the victim in November of 2020. The victim had a neck injury along with swelling and bruising on her face in her eye area. The victim's records indicated that she was discharged from the hospital to the center where she stayed for a week.

The Defendant testified that in November of 2020, he was living in a home with the victim, his mother and his mother's boyfriend. The Defendant knew the victim from when they both lived in Ohio. On November 4, 2020, the Defendant finished work and went home to their shared residence. That evening, the Defendant and the victim had an argument about their relationship. They were both drinking. At some point, the victim held a knife to her throat, and the Defendant took it from her. Then the victim stated to him that she was bleeding. The Defendant testified to the remaining events of the night consistently with the other witnesses.

Based on this evidence, the jury convicted the Defendant of the lesser-included offense of aggravated assault, a Class C felony, and the lesser-included offense of simple assault, a Class A misdemeanor. The trial court found that the Defendant was a Range II offender and then imposed concurrent sentences of ten years and eleven months and twenty-nine days, respectively. It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the evidence is insufficient to sustain his convictions because the victim's testimony was "grossly inconsistent" with her prior statements proving she was not a credible witness. The State responded that the proof at trial was more than sufficient from which a jury could conclude beyond a reasonable doubt that the Defendant assaulted the victim and cut her throat with a knife. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'" *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and

the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This court must afford the State the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

A conviction for aggravated assault requires the State to show that the Defendant "intentionally or knowingly commit[ed] an assault as defined in [T.C.A.] § 39-13-101," and the assault "[i]nvolved the use or display of a deadly weapon." T.C.A. § 39-13-102 (2018). Assault, as defined in section 39-13-101, is when a person "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury."

The evidence, viewed in the light most favorable to the State, proved that the Defendant and the victim lived together and were in a romantic relationship for a period of time. During an argument, the Defendant hit the victim in the face and stomach and used a knife to cut the victim's throat. This is sufficient evidence from which a jury could conclude beyond a reasonable doubt that the Defendant was guilty of aggravated assault and simple assault. The jury heard both the victim's and the Defendant's version of the events of that evening and judged the victim's version to be credible, as was within its province. The Defendant is not entitled to relief as to this issue.

## III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE